UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARGARET R. HILL,<br><br>    Plaintiff,<br><br>v.<br><br>JO ANNE B. BARNHART,<br>Commissioner of Social<br>Security,<br><br>    Defendant. | No. CV-05-347-CI<br><br>ORDER GRANTING IN PART<br>PLAINTIFF'S MOTION FOR<br>SUMMARY JUDGMENT AND REMANDING<br>FOR ADDITIONAL PROCEEDINGS<br>PURSUANT TO SENTENCE FOUR OF<br>42 U.S.C. § 405(g) |

BEFORE THE COURT are cross-Motions for Summary Judgment (Ct. Rec. 16, 19) submitted for disposition without oral argument on May 15, 2006. Attorney Donald C. Bell represents Plaintiff; Special Assistant United States Attorney Stephanie R. Martz represents Defendant. The parties have consented to proceed before a magistrate judge. (Ct. Rec. 7.) After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS in part** Plaintiff's Motion for Summary Judgment.

Plaintiff, 52-years-old at the time of the administrative decision, had a college education and past relevant work as a research assistant. (Tr. at 20.) She filed an application for Social Security disability benefits on September 14, 2001, alleging disability as of June 20, 2000. (Tr. at 21.) Following a denial of

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 1

benefits at the initial stage and on reconsideration, Plaintiff testified at a hearing held on December 11, 2003, in Wenatchee, Washington. Vocational expert Dennis Dexter and Plaintiff's sister, Jacqueline DeCosta, also testified. A second hearing was held September 15, 2004. W. Scott Maher, Ph.D., and vocational expert Jill Dempsey testified. Between the two hearings, in February 2004, at the request of the agency and direction of an Administrative Law Judge (ALJ), Dennis Pollack, Ph.D., examined Plaintiff. ALJ Richard Hines, on December 15, 2004, denied benefits; review was denied by the Appeals Council. This appeal followed. Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE DECISION**

The ALJ concluded Plaintiff met the non-disability requirements and was insured for benefits through the date of his decision. (Tr. at 28.) Plaintiff had not engaged in substantial gainful activity and suffered from severe impairments including bronchial asthma, post-pacemaker insertion and somatoform disorder, but those impairments were not found to meet the Listings. The ALJ concluded Plaintiff's testimony was not fully credible. The ALJ determined Plaintiff had the residual capacity for a range of medium work with additional limitations related to concentration. (Tr. at 26.) The ALJ concluded Plaintiff could not return to her past relevant work, but could perform other work which exists in significant numbers in the national economy, including bagger, dining room attendant, kitchen helper, cashier II. (Tr. at 27.) Therefore, the ALJ found Plaintiff was not disabled.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 2

## ISSUES

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff contends the ALJ erred when he erroneously (1) rejected the opinions of the examining psychiatrist, Dr. Pollack; (2) failed to give proper consideration to Plaintiff's testimony; (3) denied Plaintiff an appropriate consultative examination; (4) failed to consider lay witness testimony; (5) improperly relied on the testimony of the vocational expert.  The sixth issue, the ALJ"s failure to attach a psychiatric review technique form to his decision, is considered moot in light of a change in regulations which eliminate the need for attachment of the form.  See 65 Fed. Reg. 50774 (August 21, 2000).

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the court set out the standard of review:

> The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).
>
> The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 3

construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

> Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.
>
> In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id*. (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

1. Examining Physician

At the request of the ALJ, Plaintiff underwent a consultative examination with Dr. Dennis Pollack following the conclusion of the first administrative hearing. Dr. Pollack concluded Plaintiff would

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 4

have a moderate limitation with respect to maintaining attention and concentration and marked limitation with respect to completing a normal workday or workweek. (Tr. at 312-313.) At the administrative hearing which followed Dr. Pollack's evaluation, consultant Dr. Mabee rejected Dr. Pollack's conclusions and found Plaintiff would have moderate difficulties with persistence and pace. Based on those limitations, the vocational expert testified Plaintiff could not perform past relevant work, but could perform other work which exists in significant numbers in the national economy. (Tr. at 507, 508.) Plaintiff contends the ALJ should have relied on Dr. Pollack's opinion. If Plaintiff had a marked limitation in ability to complete a normal workday or workweek, the vocational expert testified she would be disabled. (Tr. at 509.) Defendant responds Dr. Mabee's conclusions are consistent with other evidence in the record and that the ALJ provided reasons to support rejection of Dr. Pollack's findings.

The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995). The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, at 831. citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990). Cases have upheld rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor; but those opinions also have included

reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, at 831, citing *Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Andrews*, 53 F.3d at 1043 (conflict with opinions of five non-examining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir 1995) (rejection of examining psychologist's functional assessment which conflicted with his own written report and test results).  Thus, case law requires not only an opinion from the consulting physician, but also substantial evidence (more than a mere scintilla, but less than a preponderance), independent of that opinion which supports the rejection of contrary conclusions by examining or treating physicians.  *Andrews*, 53 F.3d at 1039.

   Here, Dr. Mabee's opinion was consistent with other evidence in the record.  On December 1, 1999, shortly before the alleged onset date, Alex Caldwell, Ph.D., reviewed MMPI-2 results, noting Plaintiff was typical of individuals with an hysterical conversion disorder, somatization and hypochondriacal neuroses.  (Tr. at 168.) He also noted "[d]isability payments could support or even 'fix' a chronic medical patient role."  (Tr. at 169.)  Dr. Caldwell noted Plaintiff would respond "fairly well" to emotional catharsis of grief issues  over family difficulties.  (Tr. at 170.)

   In January 2000, Ellen Quick, M.D., noted high average to very superior intellectual functioning with memory ranging from average

to very superior. No cognitive ability tested as impaired. (Tr. at 180.)

Dr. Mounir Soliman, M.D., evaluated Plaintiff on November 10, 2001, diagnosing a mood disorder due to general medical condition and assessed a global assessment of function (GAF) score of 65, indicative of mild symptoms only. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV), at 32 (1995). Dr. Soliman also noted Plaintiff was able to understand, carry out and remember simple and complex instructions, interact with coworkers, supervisors and the general public and was able to withstand the stress and pressures associated with the workday and workweek. (Tr. at 258.) Immediate, recent and remote memory were intact. She exhibited good eye contact, was pleasant, cooperative, with logical coherent and goal directed speech. (Tr. at 257.) Any depression was reported to be improved with outpatient psychiatric treatment. (Tr. at 259.) Consultant David E. Gross, M.D., concluded Plaintiff's mental impairments were non-severe. (Tr. at 260.) Thus, Dr. Mabee's findings were consistent with other medical evidence in the record.

The only opinion finding disability was provided by Dr. Pollack. The ALJ made the following findings as to that opinion:

> The only physician to note a significant mental limitation was Dr. Pollack who noted a marked limitation in the claimant's ability to complete a normal workday or workweek. However, his psychological review is inconsistent. On the mental function rating form, Dr. Pollack has designated several areas of functioning as moderately limited and the one area as markedly limited. Yet the report narrative, which is not confined to predetermined areas of function or predetermined degrees of function, does not indicate such significant restrictions. Dr. Pollack noted that the results of the claimant's mental status test were generally good. The

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 7

> narrative is not supportive of the ratings reflected on the functional rating form and it is presumed that the report reflects the claimant's complaints concerning mental, as well as physiological, problems. In addition, the other physicians who examined the claimant found no significant limitations. Dr. Quick found no impairments. Dr. Soliman reported the claimant's condition was treatable with medication. Dr. Gross noted that the claimant's impairments were not severe.

(Tr. at 25.) These reasons are specific and legitimate and supported by the record. As noted in Dr. Pollack's report, Plaintiff was casually dressed, engaged in a great deal of sighing and yawning while completing forms, and had slurred speech with no other indication of alcohol or drug use. (Tr. at 314.) Plaintiff was the victim of sexual abuse by her father from age 4 through 11. She worked as a researcher at the University of California at San Diego from 1978 until 2000. Plaintiff was oriented to person, time, day, date, place and purpose. Her attention and concentration were mixed, at times excellent and at times she was unable to perform (serials backward) as a result of anxiety. (Tr. at 317, 318.) Memory was intact; insight, knowledge of current events and judgment were good. Valid MMPI-2 results indicated an individual who reacts to stress by developing physical symptoms such as headaches, weakness and tachycardia. Dr. Pollack diagnosed somatoform disorder, nos. (Tr. at 319.) Based on this examination, Dr. Pollack completed a checkbox form which indicated a marked limitation in ability to complete a normal workday and workweek. (Tr. at 312.) As noted by the ALJ, Dr. Pollack's functional limitations were not supported by his examination notes and were inconsistent with other findings by examining physicians nearer the alleged onset date. There was no error.

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 8

2. <u>Consultative Examination</u>

Plaintiff also contends she was denied an appropriate consultative mental health examination because the ALJ advised at the conclusion of Plaintiff's second hearing Dr. Pollack should not have been consulted since he has no credibility with the ALJs. (Tr. at 515.) However, the consult with Dr. Pollack occurred at the direction of an ALJ. Thus, Plaintiff contends the record was not fully and fairly developed, citing *Hughes v. Apfel*, 992 F. Supp. 243 (W.D.N.Y. 1997), and that insufficient notice was given to Plaintiff. Defendant responds Plaintiff failed to develop her argument on how the ALJ's post-hearing statement regarding Dr. Pollack's credibility translated to an unfair hearing. Rather, Defendant argues the ALJ appropriately rejected Dr. Pollack's opinion for specific, legitimate reasons supported by the record.

The burden of demonstrating a disability lies with the claimant. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). It is equally clear "the ALJ has a duty to assist in developing the record." *Armstrong v. Commissioner of Soc. Sec. Admin.*, 160 F.3d 587, 589 (9th Cir. 1998); 20 C.F.R. §§ 404.1512(d)-(f); id. at §§ 416.912(d)-(f); see also *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits"). An ALJ may supplement an inadequate medical record by ordering a consultative examination, i.e., "a physical or mental examination or test purchased for [a claimant] at [the Social Security Administration's] request and expense." 20 C.F.R. §§ 404.1519,

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 9

416.919.

The following colloquy occurred at the conclusion of Plaintiff's second hearing:

> ALJ: Rather than stating it just in the decision I will note for the record that all of the Judges unanimously have requested, and up to this point they thought it was being done, that Dr. Polick [sic] not be used as a CE in these cases because none of us consider him effectively credible. The reason we do not consider him credible is there's a long history of rather mild physical examinations that were totally inconsistent MRFC's . . . in conjunction with that. The specific requirements for establishing a level on severity is supposed to be the narrative portion of the decision not the checklist. In fact, the checklists are currently considered improper hypotheticals and improper level determination of severity. And, again, the narrative is to be utilized. In my opinion, and that's why I called Dr. Mabee to testify about the longitudinal history here, which is more accurate than a single exam, was to determine or to deal with that inconsistency that we have found historically throughout Dr. Polick's [sic] determinations and examinations. I take more issue, particularly with the examination itself, but his inconsistency in performing the RFC which we specifically do not ask for anymore because of recent rulings of the Appeals Council and the Agency itself. But I'll just – I'm stating that for the record so that you are aware of that because with regards to Dr. Polick [sic] I don't find a lot of credibility in his MRFC's. But would hold that they only, at most, represent simply a review for his purposes at the time of the examination.
>
> ATTY: Of course, I was not aware of that information, Your Honor, and –
>
> ALJ: No, you're not, I mean that's why I'm telling you.
>
> ATTY: Okay, and we're not prepared to address that issue. But perhaps ask the record be left open so I may attempt to address that issue.
>
> ALJ: I don't see this would turn very much on the mental anyway. It's going to turn primarily on the physical. But that's . . . .
>
> ATTY: Well, be that as it may though I would just offer one brief argument –
>
> ALJ: Sure.

ATTY: – if I may. That the –

ALJ: That's why I let you know.

ATTY: – that –

ALJ: I don't know how this got to Polick [sic] but it shouldn't have. Go head [sic].

ATTY: Okay. Well, in any event, the tests though that were administered by –

ALJ: Well, the narrative I don't take any issue.

ATTY: Issue –

ALJ: I mean –

ATTY: And even Dr. Scott Mabee indicated these were valid and recognized testing and so –

ALJ: I don't take issue with his narrative report. I take issue with his MRFC because I feel it's inconsistent. And that's why I wanted Dr. Mabee here to help us review the longitudinal record which is the more accurate for mental processing anyway so.

(Tr. At 515-517.)

Dr. Pollack's exam, at the request of the agency and direction of an ALJ, did not occur until 2004. Thus, the inference arises that as late as 2004, a consultative exam was needed to complete the record, rather than reliance wholly on the earlier exams.

Accordingly, on the current record, it is unclear whether sending the Plaintiff to a different examining consultant would have resulted in different findings by the ALJ. The undersigned concludes this matter must be remanded to revisit the issue by developing the record, that is, by sending the claimant to an appropriate examining consultant. As the further development of the record could affect the vocational expert question raised by the Plaintiff, that issue will not be addressed. Rather, during remand

the vocational expert issue should be revisited in the context of the record developed on remand.

In addition, since a different consultant's exam may affect the credibility findings during remand, that issue also shall be revisited. That issue will not be addressed here except to note there is no evidence of malingering by Plaintiff. Therefore, rejection of Plaintiff's testimony must be with "specific findings stating clear and convincing reasons." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). Similarly, the lay witness testimony will not be addressed at this time (under the standard discussed in *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993)) to permit consideration on remand in the context of an expanded record.

**IT IS ORDERED:**

1. Plaintiff's Motion for Summary Judgment (**Ct. Rec. 16**) is **GRANTED in part**. The matter is **REMANDED** for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment **(Ct. Rec. 19)** is **DENIED.**

3. The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be **CLOSED.**

DATED June 5, 2006.

                        S/ CYNTHIA IMBROGNO
                     UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 12